[No. 718-1.   Division One—Panel 1.   June 21, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. GERALD LAKE WOLFE, *Appellant.*

*Ralph A. Alfieri,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *John R. Cuningham, Deputy,* for respondent.

UTTER, J.—Gerald Wolfe appeals his conviction of unlawful possession of dangerous drugs. His assignments of error are directed to denials of both a motion to suppress evidence from an allegedly unlawful search and a motion of dismissal at the close of the state's case for failure to show possession of the dangerous drugs. We find no error and uphold the judgment of the lower court.

Two unidentified persons delivered a suitcase to the Portland, Oregon United Airlines Freight Depot for shipment by Railway Express to a "Jerry Wolfe" in Seattle. The freight agent became suspicious of the two persons because of their appearance and the declaration that the suitcase contained only clothing. After they departed, the agent opened the suitcase and observed a light colored blanket. Folding back one flap of the blanket, the agent saw packets of white powder. The agent then called a port security officer, who notified the Multnomah County Sheriff's Office. The sheriff's office sent an officer to investigate, and upon his arrival, observed the suitcase in an open condition. One of the port security officers then folded the blanket back to expose five cellophane packets, approximately 2 inches square each, filled with an off-white powder. The sheriff's officer removed one of the packets from the suitcase, opened it, and tested the contents. The test disclosed the substance was an amphetamine drug. The suitcase was then closed and sent on to its intended destination in Seattle. The Seattle Police Department set up a surveillance of the suitcase when it arrived, and upon its arrival, Wolfe and an acquaintance arrived at the Railway Express office to claim it. Wolfe's companion went into the office first, asked if the suitcase was there, and received an affirmative reply. Wolfe then entered the office and when the agent asked which of those present was Wolfe, he identified himself and signed a receipt for the package. His companion then picked up the suitcase and the two left the office, at which time they were

arrested by the Seattle Police Department. The suitcase was opened and four cellophane packets, found to contain a dangerous drug, were removed. Wolfe was arrested and charged.

Wolfe contends the action of the Railway Express Agency, the agent, the security officer, and the sheriff was joint action, thereby making the allegedly improper search of the REA agent, also improper as to the sheriff. He also attacks the sheriff's action in opening the package containing the drugs as improper without the issuance of a warrant.

█ The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply to searches by private individuals not acting in concert with agents of governmental authorities. *Burdeau v. McDowell*, 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574, 13 A.L.R. 1159 (1921); *People v. Houle*, 13 Cal. App. 3d 892, 91 Cal. Rptr. 874, 875 (1970). The subsequent seizure of drugs by officers discovered as a result of a private search is not unlawful. *Clayton v. United States*, 413 F.2d 297 (9th Cir. 1969).

It has been held that private parties were not acting in concert with law enforcement agencies who have sent circulars describing the physical characteristics of suspected trunks used to ship drugs. *People v. Temple*, 276 Cal. App. 2d 402, 80 Cal. Rptr. 885 (1969). Joint action was likewise not found where a federal agent informed an air freight shipping manager there was reason to believe the description of a waybill of the contents of a package was inaccurate and the address of the shipper nonexistent. After receiving the information, the manager proceeded to open the package and did find contraband. *Gold v. United States*, 378 F.2d 588 (9th Cir. 1967).

Direct physical participation in a search or coordinated planning is condemned as constituting joint action. *Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966); *Stapleton v. Superior Court*, 70 Cal. 2d 97, 447 P.2d 967, 73 Cal. Rptr. 575 (1969). These factors are not present in actions of the

REA agent in this case, and the record does not support the allegation of joint action.

The action of the sheriff in opening one of the packets and testing it is attacked as an improper search. We find nothing improper in his conduct and it may be justified on alternate grounds. The action of the sheriff was not improper, even without the search warrant, if he had probable cause to believe an item was contraband and exigent circumstances existed which made obtaining a warrant impractical. *Henry v. United States,* 361 U.S. 98, 104, 4 L. Ed. 2d 134, 80 S. Ct. 168 (1959); *Carroll v. United States,* 267 U.S. 132, 153, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925).

The information given the sheriff by the REA agent and the port security officer that they had apparently discovered some form of drug, combined with the failure of the senders to correctly identify the contents of the suitcase, and the agent finding the items looking like drugs in the suitcase establish probable cause for the sheriff to believe the goods were drugs.

The next flight the suitcase was to be shipped on was from 3 to 5 hours after its delivery to the REA agent. The process of phoning the sheriff, going to the airport, and testing the powder took at least 3 hours. There was no showing of sufficient time to obtain a search warrant, and we believe a case of impracticability of securing a warrant was amply established. *People v. Temple, supra.*

It could be argued that the opening of the package and the testing was not a search at all, but a mere seizure of goods already in plain view of the officer. The officer had probable cause to believe it was contraband, and where an officer is lawfully within an area, he may seize objects within his view if he has reasonable cause to believe they are contraband. *State v. Roff,* 70 Wn.2d 606, 424 P.2d 643 (1967); *State v. McIntyre,* 3 Wn. App. 799, 801, 478 P.2d 265 (1970).

Wolfe lastly challenges the sufficiency of the evidence to sustain the conviction on the element of posses-

sion. There was testimony that Wolfe signed the waybill in order to obtain possession of the suitcase. The agent was authorized to release the control over the suitcase only to Wolfe. The fact that some other person who accompanied him physically picked up the suitcase is not determinative that Wolfe did not have constructive possession. Actual possession exists where goods are in the personal custody of the person charged with possession. Constructive possession exists where one not in actual possession still has dominion and control over the goods. *State v. Cabigas,* 3 Wn. App. 740, 743, 477 P.2d 648 (1970). Wolfe's act of signing the waybill at the point of destination established he was the person the freight agent was authorized to release the package to. Wolfe had the power, if he so chose, to exclude others from possession and with this power, he could be said to be in constructive possession of the goods. He did not lose his power to exclude others from the suitcase by allowing someone else to carry it. *United States v. Santore,* 290 F.2d 51 (2d Cir. 1960); *State v. Cabigas, supra; State v. Tretton,* 1 Wn. App. 607, 464 P.2d 438 (1969).

The judgment of the trial court is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied October 27, 1971.

Review denied by Supreme Court December 13, 1971.