[No. 926-1. Division One—Panel 2. January 3, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT RAYMOND BIRDWELL, *Appellant*.

*Miracle & Pruzan* and *William F. Nelson,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Christopher J. Bell, Deputy,* for respondent.

SWANSON, J.—Robert Birdwell claims he did not know that the trunk he picked up at Sea-Tac Airport on May 9, 1970, contained 13,000 grams of marijuana. Nevertheless, after two trials[1] he was found guilty of the charge of unlawful possession of marijuana with intent to sell. He appeals.

The pertinent facts giving rise to appellant Birdwell's arrest may be summarized as follows: On May 8, 1970, an airline freight agent in San Diego, California, became suspicious of the contents of a trunk because of the nervous behavior of one Susan Livingston who delivered it to the freight office for shipment to Seattle. When the agent opened the trunk and discovered what proved to be 29 pounds of marijuana, he called a California narcotics agent who obtained a search warrant for the trunk, executed it, and then notified Seattle police on May 9 that he was going to allow the shipment to go through. Seattle police officers obtained a Capitol Hill address by tracing a telephone number given by Susan Livingston as being that of appellant Robert Birdwell, the Seattle consignee, and then placed the freight pickup station at Sea-Tac Airport under surveillance. Some time between 4 and 4:30 p.m. on May 9th, the police observed appellant Birdwell arrive in a Volkswagen microbus and pick up the trunk. Birdwell took a somewhat indirect route to the Capitol Hill address, so that the police were unable to follow him without directing attention to their patrol car, and so proceeded directly to the Capitol Hill address, arriving shortly before Birdwell. After Birdwell arrived and entered the house, the police first observed that the trunk was still in the microbus, and then knocked on the door of the premises and were admitted.

---

[1] Appellant's first trial resulted in a mistrial when the jury was unable to reach a verdict.

The police arrested Birdwell and his companion, one Merle Nichols, who proved to be the owner of the microbus, a resident of the house, and who now had the keys to the microbus in his possession. Although the police officers did not have a search warrant, they seized the trunk, removed it from the bus and placed it in the patrol car. They opened the trunk and found marijuana in it, as they had been informed by the California authorities they would.

At trial, Birdwell testified that Susan Livingston stayed at his house for 3 days in March or April, but he had only known her for a total of 6 or 7 days, and had neither seen nor heard from her since she left Seattle for San Diego. He said Merle Nichols told him she had consigned the trunk to him, and so he agreed to pick it up for her. He understood the trunk contained only her personal effects and stated he did not know it contained marijuana until the time of his arrest.

On this appeal from the conviction and sentence, appellant Birdwell, through 12 separate assignments of error, directs his arguments on appeal to

(1) the legality of the search and seizure of the trunk;

(2) the constitutionality of the presumption of intent to sell clause of RCW 69.40.070 (5), and the validity of the court's instructions based on this statute;

(3) whether the defense of unwitting possession was properly submitted to the jury;

(4) the sufficiency of the evidence; and

(5) to claimed abuse of discretion in sentencing.

Appellant's search and seizure argument may be divided into two parts. First, he claims the search of the trunk at the San Diego airport was illegal because the air freight agent, one Charles Dowling, was acting as an agent of the California law enforcement officers. This made the information given to them by Dowling which was used as the basis for the search warrant obtained by the California authorities the product of an unlawful search and seizure, argues appellant, and so the evidence gained from the search should have been suppressed.

 Only if we can say that the freight agent's conduct in opening the trunk is equivalent to doing so at the direction of a law enforcement officer does the Fourth Amendment prohibition against unreasonable searches and seizures become an issue. *United States v. Winbush,* 428 F.2d 357 (6th Cir. 1970); *Burdeau v. McDowell,* 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574, 13 A.L.R. 1159 (1921). As we stated in *State v. Wolfe,* 5 Wn. App. 153, 155, 486 P.2d 1143 (1971):

> The subsequent seizure of drugs by officers discovered as a result of a private search is not unlawful. *Clayton v. United States,* 413 F.2d 297 (9th Cir. 1969).

A close working relationship between the police and the airline freight agent may be tantamount to joint action and make the freight agent's actions in opening suspicious baggage police action. *People v. McGrew,* 1 Cal. 3d 404, 462 P.2d 1, 82 Cal. Rptr. 473 (1969); *Corngold v. United States,* 367 F.2d 1 (9th Cir. 1966). *See also Stapleton v. Superior Court,* 70 Cal. 2d 97, 447 P.2d 967, 73 Cal. Rptr. 575 (1968).

The record[2] before us discloses substantial evidence indicating that the San Diego air freight agent Dowling was not acting in concert with, or at the direction of, the California law enforcement authorities when he opened the trunk. The freight agent testified that he acted only in his capacity as an airline employee and on his own initiative. This evidence provides ample support for the trial judge's denial of the motion to suppress the evidence gained from this search. We upheld similar conduct by an Oregon air freight agent in opening a suspicious package and finding contraband in *State v. Wolfe, supra.*[3] *See also Gold v.*

---

[2]At the pretrial hearing on appellant's motion to suppress the evidence gained from the search of the trunk in San Diego and Seattle, the trial court heard by stipulation the previously recorded testimony of Charles G. McLaughlin, the California narcotics agent, and Seattle police officers Woods and Bussa. This testimony was recorded at the first trial.

[3]In *Wolfe,* the freight agent, after opening one of the packages and finding a suspicious looking white powder, called the Multnomah County Sheriff's Office. The sheriff's officer examined and tested the

*United States,* 378 F.2d 588 (9th Cir. 1967); *People v. Temple,* 276 Cal. App. 2d 402, 80 Cal. Rptr. 885 (1969); *People v. Superior Court,* 11 Cal. App. 3d 887, 90 Cal. Rptr. 123 (1970); *United States v. Averell,* 296 F. Supp. 1004 (E.D. N.Y. 1969). Our review of the evidence does not support the conclusion urged upon us by appellant.

■ The second half of Birdwell's search and seizure argument focuses upon the warrantless seizure of the trunk in the Volkswagen microbus and its subsequent search. If we are to uphold the admission of evidence gained from this search we must be satisfied that it passes the test of reasonableness; if not, it is offensive to the Fourth Amendment's prohibition against such searches. Such a determination depends upon the facts, circumstances, and exigencies of the situation confronting the police officers. *State v. Gibson,* 76 Wn.2d 814, 459 P.2d 22 (1969).

Appellant does not challenge the legality of his arrest nor that probable cause existed to justify the officers' belief that the trunk they saw in the microbus contained marijuana. But appellant does contend that the state failed to bear its burden of showing an exception to the warrant requirement. We cannot agree.

■ The officers knew of the identity of the vehicle carrying the contraband for only the period of time involved in proceeding in the somewhat circuitous course Birdwell took from the airport to Nichols' home on Capitol Hill, about one-half hour. During this time the officers did not know what Birdwell intended to do with the trunk—that is, whether he planned to take it into the house, leave it in the vehicle or secrete it elsewhere. They hoped that Birdwell would take the trunk into the house and thereby permit further investigation and the possible apprehension

---

powder and found it to be an amphetamine drug. The appellant's contention that the freight agent's action, resulting in the sheriff's seizure and testing of the substance found in the package, constituted joint action of the sheriff's deputy and the freight agent, was rejected. Even though the sheriff's office did not obtain a search warrant to seize and test the drugs found in the package, exigent circumstances justified the sheriff's actions.

of confederates. When Birdwell left the trunk in the microbus and entered the house, the police where placed in an awkward position. Under these emergency conditions, they elected to act and proceed with an arrest. If they had not done so, the appellant might have escaped, leaving them "holding the bag." The failure to obtain a search warrant under these circumstances was not unreasonable.[4] The seizure of the trunk was justified under the doctrine of *Carroll v. United States*,[5] 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1924), which was followed and reaffirmed in *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970), and amplified in *Coolidge v. New Hampshire*,[6] 403 U.S. 443, 459, 29 L. Ed. 2d 564, 579, 91 S. Ct. 2022 (1971), where the court said:

The underlying rationale of Carroll and of all the cases that have followed it is that there is

"a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a

---

[4] Even though the police had several hours' notice of the trunk's arrival and could have arrested Birdwell at the airport while carrying the trunk to the microbus, they were justified in keeping him under surveillance because of the reasonable expectation that additional evidence of intent to sell might be obtained, as well as evidence implicating others who might be participating in a marijuana sale transaction.

[5] The court in *Carroll* held that an automobile or other vehicle transporting contraband may be searched without a warrant provided that the seizing officer has reasonable cause to believe that the automobile which he stops and seizes has liquor therein which is being illegally transported. It was pointed out in *Coolidge* that because the automobile was an almost indispensible instrumentality in large scale violation of the national prohibition act, the car itself was treated somewhat as an *offender* and became contraband.

[6] *Coolidge* involved the vacuum search of a car which revealed evidence linking the defendant to a murder. The car was not touched until the defendant was removed from the scene, but was then seized and taken to the police station where it was searched without a warrant 2 days later. In such circumstances the court held that this was not a search incident to an arrest. While there was probable cause, there were no exigent circumstances allowing a warrantless search or circumstances making the obtaining of a warrant impractical which would allow either a contemporaneous search under *Carroll*, or if the circumstances existed as in *Carroll*, the subsequent warrantless search at the police station under *Chambers*.

search of a ship, motor boat, wagon or automobile, for contraband goods, where *it is not practicable to secure a warrant* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

*See also Scher v. United States,* 305 U.S. 251, 83 L. Ed. 151, 59 S. Ct. 174 (1938); *State v. Larsen,* 4 Wn. App. 356, 481 P.2d 462 (1971).

The opening of the trunk itself took place at the specific request of Merle Nichols[7] in the presence of appellant Birdwell. Birdwell[8] also wanted to know what was in the trunk, and nowhere in the record is there any indication that he objected to the trunk being opened. The motion to suppress was properly denied.

Appellant next questions the constitutionality of RCW 69.40.070(5)[9] which contains a statutory presumption that possession of 40 grams of marijuana is prima facie evidence of intent to sell.[10]

█ If a criminal conviction is to be upheld, the state must bear the burden of proving all elements of the crime

---

[7]Officer Bussa testified regarding opening the trunk: "Q When did you finally open the trunk? A I placed the defendant and the other person, Merle Nichols, in my vehicle, and the trunk was placed in the trunk of my vehicle at that time. There was a question on the part of Merle Nichols as to what the trunk contained. He felt like he should know. It seemed reasonable, and I took Mr. Nichols from the car and brought him to the back of the vehicle and pulled the trunk back out of my car and opened it and allowed him to see what was inside."

[8]At the trial, appellant Birdwell testified: "Q Now, when was the first time that you were told there was marijuana in this trunk? A Well, I was told there was when, well, I asked the officer when we were arrested, why I was being arrested and I was sitting in the car and I asked him what was in the trunk that I was being arrested for. He took Merle out and showed him and Merle told me that it was supposed to be marijuana in the trunk, but I didn't ever see it until the first time I went to court."

[9]RCW 69.40.070(5) provides in part: "In any prosecution under this section, proof that a person unlawfully possessed in excess of forty grams of cannabis shall be prima facie evidence that possession was with intent to sell."

[10]The state produced testimony that the total weight of the marijuana equalled approximately 13,000 grams, or 29 pounds.

beyond a reasonable doubt. *State v. Finister*, 5 Wn. App. 44, 486 P.2d 114 (1971). But as stated in *Finister* at page 46:

> However, it is permissible to supply proof of some elements by use of presumptions which, if unrebutted, allow but do not compel the trier of fact to find the presumed fact on the basis of proved facts. *Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969).

A statutory presumption is tested against a standard of due process which requires that there be a "rational connection" between the fact allowed to be inferred and the fact proved. A rational connection exists only if the court can say with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. *Leary v. United States, supra; Turner v. United States*, 396 U.S. 398, 24 L. Ed. 2d 610, 90 S. Ct. 642 (1970). That such a presumption may be valid was noted in *State v. Thomas*, 58 Wn.2d 746, 747, 364 P.2d 930 (1961):

> This court recognized, as early as *State v. Fitzpatrick* (1927), 141 Wash. 638, 251 Pac. 875, and as recently as *State v. Person* (1960), 56 Wn. (2d) 283, 352 P. (2d) 189, that the legislature may declare that the proof of one fact shall be *prima facie* evidence of another. The only restriction on this power is that the fact proved must bear a rational connection to the ultimate fact presumed.

Statutory presumptions of the type here involved have been upheld by our state Supreme Court on several occasions.[11]

---

[11] In *State v. Rouw*, 156 Wash. 198, 286 P. 81 (1930), the defendant was charged with the crime of unlawfully manufacturing intoxicating liquor for the purpose of sale, barter, and exchange. The statute involved provided that proof that any person (other than a regularly ordained clergyman) had in his possession intoxicating liquor in excess of a specified minimum amount, was prima facie evidence that such liquor was being held for purposes of unlawful sale or disposition.

A statute making possession of burglar tools prima facie evidence that such possession was had with intent to use in the commission of a crime was upheld in *State v. Fitzpatrick, supra,* and *State v. Palmer*, 2 Wn. App. 863, 471 P.2d 118 (1970). *See also State v. McDonald*, 74 Wn.2d 474, 445 P.2d 345 (1968).

The statutory presumption permitted by RCW 77.16.050, that posses-

■■ Is there a rational connection between an intent to sell and possession of more than 40 grams of marijuana? We begin by recognizing that acts of the legislature are presumed to be constitutional. *State v. Moore*, 79 Wn.2d 51, 483 P.2d 630 (1971). The constitutionality of the presumption that the failure of a parent to support his child is willful, contained in RCW 26.20.080, was carefully considered and upheld in *State v. Finister, supra* at 46, where the court explained its reliance on legislative knowledge to provide the connection between failure of support and willfulness:

> Legislative interest in providing for support of children by their parents, rather than by the public, is great when many worthy purposes call for expenditure of limited public resources. We must assume that the legislature acquainted itself with the problem before it chose to enact the legislation in question. The legislation touches an area that is not one of special judicial knowledge, nor one which is well understood by the public at large. We are, therefore, inclined to give considerable weight to the legislative judgment in this matter.

Likewise, we rely upon legislative expertise and judgment based upon a presumed careful analysis of the subject in enacting this legislation. We are further persuaded by the evidence as to the selling price of marijuana and the number of cigarettes obtainable from 1 gram of the substance.[12]

---

sion of an artificial light and a rifle after sunset in any wooded section where deer or other animals mentioned in the statute may reasonably be expected is prima facie evidence of unlawful hunting, was upheld in *State v. Person*, 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960).

The presumption created by RCW 9.41.030, which provides that being armed with a pistol without a license to carry it is prima facie evidence of intent to commit a crime of violence, was held to be constitutionally valid in *State v. Thomas, supra*, and *State v. Gilbert*, 3 Wn. App. 491, 475 P.2d 797 (1970).

[12]Dr. Fontan, the state's criminalist, testified, "Normally, a marijuana cigaret in my opinion would be between two-tenths and half a gram of marijuana."

Officer Bussa stated, "Q How much is a lid of marijuana? A Ten dollars. Q . . . How much is a lid? A A lid should be . . . approximately 28 grams."

Possession of more than 40 grams is consistent, more likely than not, with only one purpose—an intent to sell it. We believe a rational connection does exist between the fact proven (possession of more than 40 grams) and the inferred fact (intent to sell) and so uphold the statute.

The evidence that appellant possessed more than 40 grams of marijuana was sufficient to take the case to the jury on the issue of intent, and it is for the jury to determine what weight, if any, to attach to it. *State v. Thomas, supra.*

■■ Appellant points out that possession with intent to barter, exchange, distribute, or transport marijuana is only a misdemeanor and that it is just as likely that he intended to barter it, exchange it, distribute it, or transport it as it is that he intended to sell it. In the face of a presumption of intent to sell, which we believe is constitutionally valid, appellant failed to offer any evidence as to what he intended to do with the marijuana. He steadfastly maintained that he did not know the nature of the trunk's contents. In *State v. Fitzpatrick,* 5 Wn. App. 661, 491 P.2d 262 (1971), a case decided subsequent to the oral argument in this case, the defendant offered an explanation for his possession of marijuana and said that he was paid to transport it from an airport in Pierce County to someone in Canada. This explanation was accepted as a verity by the trial court and incorporated in its findings of fact. The presumption of intent to sell was successfully rebutted. That is not the situation here. Our Supreme Court, in *State v. Thomas, supra,* in upholding a statute making the fact that the defendant was armed with a pistol for which he had no license, prima facie evidence of his intent to commit a crime of violence, said, 58 Wn.2d at 748:

> The distinction must be kept in mind: that the statute does not make the possession of a pistol without a license evidence of the commission of crime, but evidence of intent. This inference of intent is, of course, rebuttable; but, more important, it is not conclusive even if no attempt is made to rebut it. It is sufficient evidence to take the case to the jury on the issue of intent, but the jury is

not obligated to attach any weight to it. It considers it for what it may be worth. *State v. Person, supra.*

Appellant next objects to the instruction on the statutory presumption[13] and argues that this instruction denies him the presumption of innocence because it directs the jury to consider the evidence of quantity on the question of intent and places the burden on the defendant to contradict and overcome such evidence. A similar argument advanced against a statute which permits a presumption of willfulness upon a showing of nonsupport was rejected in *State v. Finister, supra* at 47, where we said:

> The trier of fact need not believe even the unrebutted presumed fact of willfulness. And, of course, it is always open to the defendant to excuse his conduct by any evidence available to him, though he need not do so if he so chooses. Giving due deference to the legislative wisdom and expertise in this area, we are of the opinion that the challenged presumption of RCW 26.20.080 meets the constitutional test of *Leary* and *Turner.*

(Footnote omitted.) The instruction on prima facie evidence given in this case does not relieve the state of its burden of proving beyond a reasonable doubt the issue of intent. Appellant further contends that the directive of *State v. Person,* 56 Wn.2d 283, 288, 352 P.2d 189 (1960),

> it should be made clear that the statutory presumption permits, but in no way directs, the jury to convict the accused, and must be considered by the jury in the light of the presumption of innocence which arises upon a plea of not guilty and accompanies the accused throughout the trial until overcome by evidence which convinces the jury of the accused's guilt beyond a reasonable doubt[,]

---

[13]Instruction 9 reads as follows: "The statutes of the State of Washington provide as follows:

"'In any prosecution . . . , proof that a person unlawfully possessed in excess of 40 grams of cannabis shall be prima facie evidence that possession was with intent to sell.'

"Prima facie evidence means evidence which may be accepted as proof of a particular fact. Such evidence should be given just such weight as it seems to you to merit, and should be considered by you along with all the other evidence in this case and in the light of all the instructions I have given you applicable to this particular case."

was not observed in instruction 9 under consideration here. We do not agree. It told the jury that prima facie evidence *may be accepted* as proof of a particular fact, but it should give such evidence only such weight as it believes it merits. The court also told the jury that it was to consider such evidence along with other evidence and in the light of all the instructions, which included those on the presumption of innocence. It requires no citation to state that jury instructions must be considered as a whole. We therefore find no merit in this contention.

Appellant Birdwell's sole defense on the merits to the charge of unlawful possession of marijuana with intent to sell was that his possession was unwitting or unknowing and therefore he had no intent with reference to it at all.

Appellant assigns error to the trial court's refusal to give his requested instruction 3 explaining his defense, which was identical to the trial court's instruction 7,[14] with the addition of the following paragraph:

> You are instructed that unwitting or unknowing possession of a dangerous drug is not unlawful.

Appellant also assigns error to the trial court's refusal to give his proposed additional instruction 6:

> You are instructed that unwitting or unknowing possession of marijuana is not unlawful. If after considering all the evidence you have a reasonable doubt as to whether or not this defendant's possession of marijuana, if any, was unwitting or unknowing, then you should find him not guilty.

 Jury instructions must be considered as a whole, and it is not error for the trial court to refuse to give a

---

[14]Instruction 7 reads as follows: "If you find from the evidence beyond a reasonable doubt that the defendant was on or about the date set forth in the information, in King County, State of Washington, in possession of the dangerous drug described in the information herein, then I instruct you that unless you find evidence to the contrary, the presumption arises that this possession of such drug was unlawful and the burden of showing that such dangerous drug was lawfully obtained and possessed by the defendant is a matter of defense to be proved by evidence sufficient to raise in your minds a reasonable doubt as to the unlawfulness of said defendant's possession of such drug."

requested instruction when the other instructions given adequately and correctly state the law. *State v. Passafero,* 79 Wn.2d 495, 487 P.2d 774 (1971); *State v. Stringer,* 4 Wn. App. 485, 481 P.2d 910 (1971). While a defendant is entitled to argue his theory based on the instructions given by the court, he is not entitled to put his argument into the court's instructions. *State v. Lane,* 4 Wn. App. 745, 484 P.2d 432 (1971); *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968). At the same time, giving an instruction on a party's theory of the case is required provided there is evidence to support it, *Braden v. Rees,* 5 Wn. App. 106, 485 P.2d 995 (1971), and the failure to do so, or the giving of otherwise incomplete instructions, constitutes reversible error. *State v. Ladiges,* 66 Wn.2d 273, 401 P.2d 977 (1965); *Kiemele v. Bryan,* 3 Wn. App. 449, 476 P.2d 141 (1970). *See State v. Rogers,* 5 Wn. App. 347, 486 P.2d 1125 (1971).

 Among the instructions given by the trial court in the case at bar was the following reference to the burden of proof placed upon the state to prove beyond a reasonable doubt that appellant committed the offense of possession of a dangerous drug with intent to sell:

> To convict the defendant, Robert Raymond Birdwell, of the crime of unlawful possession of dangerous drugs with intent to sell, as alleged in the information, the State must prove beyond a reasonable doubt:
>
> (1) That on or about the 9th day of May, 1970, the defendant did unlawfully and feloniously have in his possession a certain dangerous drug, to-wit: marijuana;
>
> (2) That the defendant possessed such dangerous drug with intent to sell;
>
> (3) That said act or acts occurred in King County, Washington.
>
> If you find from the evidence admitted in this case that the State has proved beyond a reasonable doubt the foregoing elements of the crime charged, then it will be your duty to return a verdict of guilty of the crime of unlawful possession of dangerous drugs with intent to sell.
>
> On the other hand, if after weighing all the evidence you entertain a reasonable doubt as to the establishment of any one of the foregoing elements, you should return a verdict of not guilty.

Instruction 3. Clearly, if the jury had believed Birdwell's testimony as to unwitting or unknowing possession, they would have a "reasonable doubt" about the state's proof of one of the essential elements of the offense—namely, intent to sell—inasmuch as it is manifestly impossible for one to have an intent to sell something that he does not know he possesses. Accordingly, while we do not specifically approve the practice of failing to give an instruction on the defense of unwitting possession in cases where the offense charged is possession of a dangerous drug *with intent to sell,* and while a different case might be presented if the charge were mere possession of a dangerous drug, we conclude that in this case, after an examination of the instructions given by the trial court as a whole, the appellant was able satisfactorily to argue his theory of the case under the instructions given. Therefore it was not reversible error for the trial court to refuse to give appellant's requested instructions concerning the defense of unwitting or unknowing possession.

■■■ Appellant also assigns error to the trial court's failure to grant his motion to dismiss for insufficiency of evidence, and for failure to grant his motion for arrest of judgment or new trial. In considering this argument, we must regard the state's evidence as true and admit all reasonable inferences that can be drawn from the evidence. The jury was entitled to find that Birdwell took possession of the trunk containing the 29 pounds of marijuana at the airport and had it in his possession until he was arrested on Capitol Hill. In view of his prior relationship with the consignor of the trunk, Susan Livingston, and coupled with his admitted personal use of marijuana, the jury could reasonably infer that he knew marijuana was being shipped to him in the trunk. In addition, his evasive action in eluding the police at the airport and taking a circuitous route to the Capitol Hill address substantiates the inference that he knew the trunk contained an illegal substance. When the jury found a knowing possession of an amount of marijuana exceeding 40 grams, it was then entitled to pre-

sume that Birdwell intended to sell it. The jury could accept or reject such presumed fact as evidence of intent to sell. A factual question was presented for the jury's determination. There was sufficient evidence to create a question for the jury. *See State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971).

Finally, appellant claims the trial court abused its discretion in sentencing him to the department of institutions and failing to exercise its discretionary power to grant suspension, deferral of sentence and probation. The determination of this question rests exclusively within the discretion of the trial court. It is well settled that appellate courts have authority to review the imposition of a sentence to determine if discretion has been abused. *State v. Derefield*, 5 Wn. App. 798, .... P.2d .... (1971); *State v. Hurst*, 5 Wn. App. 146, 486 P.2d 1136 (1971); *State v. Potts*, 1 Wn. App. 614, 464 P.2d 742 (1969). Discretionary abuse may exist only where it can be said that no reasonable man would take the view adopted by the trial court. *State v. Hurst, supra.*

The record reveals ample basis for the exercise of the discretionary determination, and we can find no abuse of discretion by the trial court.

Judgment affirmed.

FARRIS, A.C.J., and JAMES, J., concur.

Petition for rehearing denied March 28, 1972.

Review denied by Supreme Court May 24, 1972.