UNITED STATES of America, Plaintiff-Appellee,

v.

Maurice LAMAR, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Rufus AARON, Defendant-Appellant.

Nos. 76–2768, 76–4224.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1977.

Rehearing and Rehearing En Banc Denied Feb. 10, 1977.

Donald R. Harrison (Court-appointed), Montgomery, Ala., for defendant-appellant.

Ira DeMent, U. S. Atty., Charles R. Niven, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

Maurice Lamar was found guilty on two counts, of conspiracy to possess, and possessing, heroin with intent to distribute, 21 U.S.C., § 841(a)(1) and 21 U.S.C., § 846.

Rufus Aaron was found guilty of both conspiracy and possession.

Both appeal on the ground that evidence obtained by a search should have been suppressed.

We affirm both convictions.

On February 12, 1976, Lamar deplaned at the Montgomery, Alabama, airport, where he was met by Rufus Aaron. Also at the airport was Detective Little, of the Selma Police Department, there to pick up another passenger. Being aware of Lamar's suspected involvement with drugs in the Selma area, Little kept the two men under observation. As he watched, Lamar and Aaron approached the bag pick-up area, but they soon departed without picking up a piece of baggage marked "M. Lamar".

His suspicions thus aroused, Little advised the Montgomery Police by telephone of what he had seen. In response to the call, two Montgomery police officers arrived shortly thereafter. Little briefed them on what he had observed and of what he knew about Lamar. Little then returned to Selma.

One of the Montgomery police officers, Detective Segrest, went to the Delta Airline's counter and informed the employee on duty, Mr. Flournoy, that he was a police officer and that he was interested in the unclaimed bag from the recent flight. Flournoy told Segrest he had already placed the bag in the back room to be searched for identification. Segrest asked to be notified if anyone came to claim the bag. Flournoy agreed to do so and invited Segrest to join him for a cup of coffee in the back room.

Having gone to the counter to wait on customers, Flournoy subsequently returned to the back room to search the bag for the owner's address. In the course of looking through the contents of the baggage, Flournoy discovered a small plastic bag containing a package of heroin and a package of lactose. Segrest instructed Flournoy to replace the heroin in the bag in the manner in which he had found it.

Thereafter, Rufus Aaron and one Bruce Wayne Robinson returned for the bag, presented the claim check, and took the bag into their possession. They were arrested. A warrant was then issued for Lamar, who subsequently turned himself in to the authorities.

Prior to trial, Lamar filed a motion to suppress, directing his attack to the warrantless search of the travel bag and the resulting discovery of the heroin, contending that under the circumstances, the presence of the police officer at Flournoy's search rendered it violative of the Fourth Amendment. As already indicated, the motion was denied.

As the defendant recognizes, the exclusionary rule has long been viewed "as a restraint upon the activities of sovereign authority, and . . . not . . . a limitation upon other than governmental

agencies", *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). Thus, if a search is conducted by a private individual, for purely private reasons, it does not fall within the protective ambit of the Fourth Amendment, *United States v. Maxwell,* 5 Cir., 1973, 484 F.2d 1350, 1352.

This is not a case where a warrantless search of luggage was conducted after the owner had been arrested or detained by authorities, as happened in *United States v. Anderson,* 5 Cir., 1974, 500 F.2d 1311, 1318, *rehearing denied,* 504 F.2d 760; *United States v. Lonabaugh,* 5 Cir., 1973, 494 F.2d 1257; and *United States v. Garay,* 5 Cir., 1973, 477 F.2d 1306.

 The uncontradicted testimony at the hearing on the motion to suppress shows that the police officer, although present, did not request that the bag be searched and did not participate in any manner in the search. Further, it was not disputed that the airline employee was acting in the usual and ordinary course of his customary duties when he searched the bag for identification and address purposes, appellants' contention being that the airline employee could have obtained Lamar's address by telephoning the Selma officer and that the search might have been delayed until "closing time" if the Montgomery officer had not been there. The fact remains that the traveller had left without picking up the bag, the officer did not ask that it be searched, the officer took no part in the search, and the goods would still have been in the bag if the examination had been delayed.

One of our earlier cases with similar facts is *Barnes v. United States,* 5 Cir., 1967, 373 F.2d 517, in which a suspicious motel keeper searched his guest's travel bag, had his suspicions confirmed, called the police, told them of the bag's contents, and turned the bag over to authorities.

We rejected the argument that there had been a violation of the Fourth Amendment, saying:

 The fourth amendment and the case law applying it do not require exclusion of evidence obtained through a search by a private citizen. Rather, the amendment only proscribes governmental action. *Burdeau v. McDowell,* 1921, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; *McLindon v. United States,* 1964, 117 U.S. App.D.C. 283, 329 F.2d 238. Clearly the search complained of here did not involve governmental action and was therefore not illegal within the meaning of the fourth amendment.[3]

(Footnote omitted).

The facts in *United States v. Blanton,* 5 Cir., 1973, 479 F.2d 327, were very much like those we have here. Blanton left his bag for several hours in the unsupervised public baggage area at an airport. An airline attendant opened the bag to determine ownership. He found a silencer and a pistol. The authorities were called. They directed that the bag be held and the owner detained if he attempted to claim it. We held that the "original search was clearly by a private person and outside Fourth Amendment protection", saying that *Barnes* "is controlling".

We noted, however, that the case was "to be distinguished from cases where the officers participated in or are in league with the private person making the initial search". As to any "league" between the officer and the airport employee in the present appeal, it must be observed that the airport employee had not called the officer to the scene. Both the employee and the officer testified (undisputed) that the officer had not requested the search and had taken no part in it. When the employee found the heroin bag he called it to the officer's attention, he being in the lounge at the time.

As in *Blanton, supra,* we hold that *Barnes, supra,* is controlling and that the denial of the motion to suppress was not error.

Later on, before the air terminal closed for the night, Aaron showed up with the claim check for the bag, took possession of it, and was arrested. His motion to suppress was correctly denied. The authorities already knew what was in the bag, knowl-

edge obtained from the original search by a private individual which transgressed no Fourth Amendment rights.

The judgments of conviction as to both Lamar and Aaron are

AFFIRMED.